Today's cases will be called as previously announced and times will be allotted to counsel. The first case today is number 25-1134, Jane Doe v. City of Boston et al. At this time, would counsel for the appellant please come to the podium and introduce herself on the record to begin. Good morning, your honors. Sydney Karras, student counsel for plaintiff appellant Jane Doe, alongside supervising attorney Adderson-Francois.  You may begin. May it please the court. If this court were to affirm the district court's decision, it would then become this circuit's precedent to unequivocally permit an employer to disclose something entirely false and manufactured in an employee's record and yet be immunized from Title VII liability. To use this case as a vehicle for setting that precedent would not only run afoul of Title VII's purpose, but would be based on grave misunderstandings of the law. The district court committed three reversible legal errors, first when it conflated claim and issue preclusion, second when it refused to consider time-barred evidence of retaliation as required by the Supreme Court in Morgan and reaffirmed by this court, and third when it misapplied the legal standards for adverse employment action and but-for causation. Under the correct legal standards, this is not a case that can be resolved as a matter of law. The record contains genuine disputes of material facts that belong to a jury. To my first point, the district court erred when it conflated claim and issue preclusion. Doe's only claim is that since February 2, 2017, BPD has disseminated false information to her prospective employers and the Washington Post in retaliation for her protected activity of reporting the rape. Under Boateng and Lucky Brand, Doe is not claim precluded from recovering on factual causes of action that were not in existence in February of 2017. But when they received the public records request from the Washington Post, what were they to do? They were to disseminate truthful information, Your Honor. BPD instead chose to... So this is a retaliation claim. So the allegation is something happened after the date in 2017 that is retaliatory. And so what I understand this case has to be about is a person who works for the Boston Police Department gets a request from some employer somewhere for records and sends those records. Now there may be a long back story that is retaliatory that happened before the date on how those records got into the file. But it seems to me the act is the sending of the records and it very well could have been done, and I don't really see much evidence that it wasn't, by some person who gets a request and fills it. What makes that retaliatory? Your Honor, what makes that retaliatory is while the adverse act does occur post-2017 and that is a discrete act under Morgan and Malone, we can use background evidence pre-2017 issues of fact in support of that timely claim. But why does the background fact that those records by some other Boston Police people at some earlier time did something retaliatory shed any light on what this particular employee did when they got a request and they filled it? Well, what sheds light on that, Your Honor, is the connection between pre-2017 evidence and post-2017 evidence. The pre-2017 evidence establishes the protected activity Doe engaged in. It determines why and when BPD developed a motive to retaliate. And it shows the selective actions that BPD actors took that led to the disciplinary charges in Doe's file. The post-2017 evidence shows that BPD is acting with that same retaliatory motive it developed at the time of Doe's protected activity because it deviates from standard procedure when—  So that's the part that to me is the key if you have a case. And I looked at what you cited in the depositions on that point, that there was something post-2017 about how they sent the material out that is unusual or not according to how they operate. And I got to say, I read those pages, I couldn't figure out what that was. So can you clearly tell me what it was that deviated from normal practices? Of course, Your Honor. I would point the court to pages 723 through 733 of the Joint Appendix. That is Superintendent Robert Ciccola's deposition testimony. And he testified that when BPD receives a background check request, the common practice is to send that request to HR, which then responds with the former employee's personnel files. And if HR's—or if BPD is going to respond with anybody's disciplinary resume, it must be specifically requested by the prospective employer. But instead of acting according to that common practice, in Doe's case, each time BPD receives a background check request for Doe, they deviate from that standard procedure and release her disciplinary resume instead of only her personnel file. Who was it who caused the deviation? It would be BPD, Your Honor. Which person? I'm happy to look into that in the Joint Appendix and have that for the court upon rebuttal, but I'm not familiar with— So your theory to work, wouldn't it have to be someone who was aware of the actions she took that you're saying prompted the retaliation? Your Honor, the BPD actors who had a pivotal role in the initial investigation of Doe and the resulting disciplinary charges are all still at BPD. And for example— But you have to zone in on what is the action. Isn't the action the sending of the materials? The action is the sending of the disciplinary record because— And that's done by a person? I would assume so, yes. Right. And that person has to be acting in a retaliatory manner for this to be a claim? Yes, Your Honor. And the deviation from standard procedure raises that inference of retaliation, as does the fact that the same BPD actors who had the role in the initial investigation are still at BPD. And to make a point on that, I would point the court to pages 2,532 of the Joint Appendix, where a DHS investigator reached out to BPD's HR division to confirm Doe's dates of employment, and HR instead sent the investigator to the Internal Affairs Division, and then the investigator was allowed to comb through Doe's disciplinary record and take notes on it, and that authorization was made through the BPD chain of command. I think it would be helpful if you could still focus in on the causal link here. I'm having trouble seeing how you can link up the action she took that you say incited the retaliation to the event that you say is retaliatory, unless you can show that the person who was responsible for that event was at least aware of the action that incited the retaliation. I would go back to the summary judgment standard, because that's where we are, and the record does raise a reasonable inference, considering reasonable inferences have to be drawn in the non-moving party's favor, that it was that same retaliatory motive that developed at the time of Doe's protected activity. Well, a motive doesn't send out records. I'm sorry, I didn't hear that? A motive doesn't send out records, it's a person. And I can't find in the record any indication. For all I can tell from the record, it was someone who was hired by HR the day before, or it was someone who didn't even know her, because we do have a large gap in time between her undertaking the activity that she says prompted the retaliation and the act that you're saying is retaliatory. I would again go back to the fact that the deviation from standard procedure does raise that reasonable inference of retaliation, because if it were a person sending out the record with no desire to retaliate against her, they would be doing what Robert Ciccolo testified was BPD standard practice, and that would be to only release Doe's personnel file and not release her disciplinary resume. Well, even if it was, suppose it was he that sent out the records and he knew, you would still need to show that she hadn't, that the requests were not reasonably construed as requests for disciplinary record. And that would be BPD's burden to show in the waivers that they bring, that's their affirmative burden to prove that the language of those waivers would allow BPD to deviate from procedure and send out Doe's disciplinary file, but BPD hasn't. Isn't it just the other way around, that if the linchpin to your argument is a deviation in procedures gives rise to an inference of retaliation, then the starting point to make your case is to show there was a deviation in procedures. And you can't show that there was a deviation in procedures unless you can show that the requests that were actually made here did not align with the limited requests that the witness was referring to. We can show the deviation in procedure based on Robert Ciccolo, who oversees the HR department, testified to in his deposition. If standard procedure is to only release an employee's personnel file, then it's suspicious why BPD also released Doe's disciplinary file. And there are examples in the record, for example— Can we talk to the person who did it and say, why did that happen? And again, at summary judgment, so long as we raise genuine disputes of material fact, then that would be a question properly before a jury. So we're left now to put together the links of logic in your argument. We're left to have to presume that the requests made of the department were not of a kind that the witness said did prompt the release of records. And we have to further assume that the person who actually released the records was aware of her conduct that she says prompted the retaliation. Your Honor, the reasonable inference of retaliation is that deviation from standard procedure. And the fact that the BPD actors— How do you—don't we just have to assume, based on your argument, there was a deviation of standard procedure? What's your evidence that there was? Your Honor, the waivers that BPD has provided in the record do not provide that prospective employer specifically reached out to BPD for Doe's disciplinary file. And we have the example from the DHS investigator who reached out to BPD solely to confirm Doe's dates of employment, yet was directed to Internal Affairs to review her entire disciplinary file. So that would show the deviation in procedure from what Robert Ciccolo testified was standard procedure at BPD. And who did that? I'm sorry? Who did that? Who said, go talk to Internal Affairs? The authorization was made through the chain of command. So it is a genuine dispute of fact is who was all in that chain of command and that would be properly decided at trial. But don't you have to show this person did it and there's some reason to think they did it for a reason that's retaliation. And you're saying we don't know who did it. And all we know is that there is a general rule that you only give out the employment file. That's all we know? We do know that that's a general rule from Robert Ciccolo's deposition testimony. And the BPD actors who had a pivotal role in the initial disciplinary investigation and the resulting charges are all still at DP. And do you have evidence that they were manufacturing or directing the putting out of records in response to these requests? It raises a reasonable inference of a desire to retaliate.  I mean, that's the line, right? There's a, you get to a trial if it's non-speculative and I'm asking you who did it and you can't really tell me. That seems like we're in the realm of, well, we're just speculating on what might have happened. I wouldn't say that we're speculating, Your Honor. I think that pre-2017 evidence, I see that my time is elapsed. You can finish that answer. Pre-2017 evidence of retaliatory motive at the time of Doe's protected conduct, along with selective enforcement against Doe instead of other similarly situated officers, combined with the post-2017 evidence of this retaliatory motive still being in place because the BPD is deviating from standard procedures, specifically with respect to Doe's records and not other officers, raises a reasonable inference of retaliation, enough to raise a genuine dispute of material fact at summary judgment. For this case, not to be appropriate to be decided summarily. Thank you. Thank you. Thank you, counsel. At this time, would counsel of the appellees please introduce yourself on the record to begin? Good morning, Your Honors. My name is Kay Hodge and with my colleague, John Simon, we represent the City of Boston and the Boston Police Department. Basically, what you have is- Ms. Hodge, could you just lower the microphone just slightly? Thank you. As argued in our briefs, we believe that the summary judgment was properly decided by the district court judge and it should be affirmed by this court. And I'd like to start first with, although not addressed by the district court, this case should have been resolved on race judicata principles because the fact that the district court did not specifically find race judicata doesn't preclude your authority to review the case as a matter of law de novo. It's undisputed that Doe filed three separate cases in the Massachusetts court system. The first primarily focused on discrimination. The second and third raised the identical issue which is being raised here, which is that the disciplinary record, the charges, if you will, were false. But retaliation can go on, right, over time, right? Absolutely, 100%. So at some later date, long after that last lawsuit, someone may do something retaliatory and they're not precluded from raising that because they complained about some other retaliation that they lost earlier. You are 100% correct, Your Honor, but I would direct your attention to the reply brief. The reply brief which was submitted by Doe really doubles down on the fact that what they're arguing here is the falsity, the lack of truth. So that's why I wonder if this is all a word game. Because if this is just a word game about whether it's claim preclusion or just failing on the merit. So the discussion we had was very much on this point when we were saying, well, you can't rely on just what happened in the past to say that this new act was retaliatory. That may be right, but is it really claim preclusion or is it just you've brought, you've said this new act was retaliatory and we say, or you say, or someone says there's no evidence of that. Is it really claim preclusion or is it really a failure of proof that you're talking about? You know, Your Honor, I don't believe that it matters, obviously. We are arguing res judicata because that was what the Massachusetts system determined on the second time that the same claim was raised in the Massachusetts court system. And we believe that it should be, you know, it should be a factor considered by this court. But whether you do or you don't, what you have fundamentally in which Judge June clearly raises in his decision is the fact that there are some essential elements that are applicable to a retaliation case. Those essential elements must be established with timely evidence. What Judge Talwanti decided was that it had to be post-2017. However, as Boston has pointed out in our brief, and I point out to you specifically, in the record of the case, the DOE used in the previous 2017 case before the Massachusetts courts, both the DHS, the Department of Homeland Security situation, and the Washington Post in that case in seeking to have a preliminary injunction issued. It was denied. Now, she's also moving that incident, which happened, it was clearly a post-2017 incident, but was in fact raised in that lawsuit. And she's now raising it yet again in this, her fourth lawsuit, albeit in federal court, which began in D.C. and is now up here in this court. And I would direct the court to the fact that in Thurston versus Henderson, which was a 2000 case decided per curiam by this court, this court stated, although it is true that time-barred events may be considered as relevant background evidence, these occurrences cannot be used as a substitute for proof of actual, in that case, it was harassment, but of, I would argue, retaliation during the limitations period. So that gets to what I think we were talking about in the first 15 minutes, which is you can't just say that bad things happened in the past, and therefore, this sending of the documents was therefore also a retaliatory thing. You can't do that. So in her response to me was right, I think. But there were things that happened in the post-period around the sending of the documents that are sufficiently suspicious that when you look at it all together, maybe you do see a retaliatory sort of conspiracy that went on over a long period of time. What is your response to that? My response to that is you have to keep in mind that in retaliation cases, as opposed to just harassment cases or other types of cases, that it is considered a discrete act case. And so you have to separate it into parcels. And each discrete act, i.e., the post-2017 cases, there has to be a new hit upon it here. Who did it? What happened? Keep in mind, this summary judgment happened after full discovery. You do not see any issue in the factual statement that identifies who did what or that identifies even that there was a deviance or a lack of comportment with policy. So they say the deviance, at least as I understood their argument, their deviance was the deviation was you directed them to the disciplinary file and it should have been limited to the employment file. You know, the fact of the matter is what Robert Sokolis testified to, and if you read his deposition, it very clearly testifies to this. That would be ridiculous. If that were the case, then that would mean that no police officer's disciplinary record would ever be discoverable. Because the fact of the matter is, is that he said personnel records give you a name, rank, and serial number, dates of employment, and specific positions along the way. The discipline file, he says, is maintained in IA, internal affairs, and it is separate. What plaintiff is suggesting is the fact that he says upon request, yeah, in the normal course you might get just one file, but for a police officer, they can ask. And then I would direct your Honor's attention to pages 55 through 56, including note 17 in our brief. And what I would refer you to is a sample, and I concede it's a sample, of the kind of release that occurred. What you have here, and there is no facts that are different except for plaintiff's personal self-serving testimony. That in each case, when Boston sent out her file or her disciplinary information, the fact of the matter is, is they would not have known. They didn't send it out to everybody in the world. They sent it out at her specific request and upon receipt of a release. Doe now argues, uniquely, that, well, you see, the releases were given to the prospective employer and therefore it has nothing to do with Boston. Au contraire. What you have in, on those pages, is a specimen of the kind of release, it's pretty classic, when a prospective police department is looking for information from another police department. And it specifically includes a release by the applicant, authorizing the release of data from to, yes, the prospective employer by the prior employer, in this case, Boston. And it includes a full indemnification and other kind of release. But... So I see it. They asked for disciplinary records in those two. They asked for the discipline, they asked specifically for the following data, records, documents, 2X. And if it is your position that there's not a disputed fact that there has to be, I mean, that it's somehow wrong to give the disciplinary record when somebody says, release my employment record? And to the contrary, to the contrary. We argue in our brief, the fact that it is a matter now of public policy, because Massachusetts did in fact pass the Police Reform Act, which requires the maintenance of these records accurately, and requires that it be produced, and it is considered a public record. What is, why is that important? It is important because it's a matter of public policy to not divulge what existed at the time. Keep in mind, what you have here is a situation which has consequence. And I think it's really important here to recognize. This is a case about actions or inactions that have legal consequences. Doe had the chance, because Boston has an entire procedure, where when charges are sustained, there is a, you can ask for, and she did ask for. And an entire panel, excuse me, hearing was convened. She went to the hearing. Could you break down your argument, because I'm not sure I'm following each point. Could a jury find, based on the testimony of one of the police department officials, that there was a standard practice of only producing disciplinary records when they were expressly asked for? Could a jury find that based on that testimony? Oh, absolutely. They could find that. So if they found there was a practice of only producing disciplinary records when specifically asked for, could a jury find that at least some of the requests here did not specifically ask for disciplinary records? There's no evidence in the file after full discovery that suggests that there were any requests that did not assume disciplinary records when the request came from another police department. So you're saying no jury could reasonably find a violation of the standard practice? Yes. I would argue that, and there is no even real allegation of that in either the original complaint and or in the statement of facts you have before you of the real deviation of any practice. Sekola was responsible for personnel. He testified to what his responsibility was. But he said, discipline is over here. And we have cited not only testimonial evidence, but also case law evidence that suggests that, as a matter of public policy, it is in the best interest of society in general that police officers' disciplinary records be known. There are a half dozen or so requests for records in this record, I believe. Yes. And you're saying if we look at each one of those, we will find a specific request for disciplinary records? Your Honor, I'm not going to speculate as to whether or not in each and every case the clerk that is in fact going to routinely send out the record in fact read each of the items that have been requested. No, no, no. My question is, are you telling us that each of those half dozen or so requests specifically ask for records, disciplinary records? Yes. What has to happen is there has to be a request from the prospective, the applicant, our former employee or current employee, to send their file, and there has to be a release. That is what the record currently says. You have three of them in your brief. We have three of them in our brief. I'm looking at that all say discipline records. Yes, but there is no evidence, and we do include in the footnote, actually, the language of each of the other references. And the thing that I think is important here is, as Justice Stevens stated, in United Airlines v. Evans, albeit a statute of limitations case, so not 100% apropos, but important if you read it in conjunction with Thurston, that suggests time-barred information cannot serve. As a retaliatory motivation— Before you go to that, I'm not sure I heard an answer to my question. Okay. Are you saying that with respect to each and every one of the half dozen or so requests for information that the Department received, all of them specifically ask for disciplinary records? Your Honor, standing here right at this moment, I cannot remember that each and every— my answer is yes. I think that the assumption would be yes. I can't visualize that I looked at each and every one of the records personally. Well, if you can't, then how can we proceed based on— Because the burden is on the plaintiff in this case. But here's their story. Here's their story. Their story is that post-2017, these disciplinary records were disclosed, and that under Boston Police policy, they should not have been. And then the question is, can we determine that that's retaliatory? So they say, point one, they didn't follow present procedures. That's post-evidence. Then they say, and what really backs up our case, is a long story of retaliation against this woman. And so when you put it all together, you can look at the back information, and we have something from the post-period, which is the failure to follow procedures, and then you say it's now a question for the jury. That is their story. Your response is, no. They did follow procedures. One, because it's public policy. And two, because she was actually asking that they turn over the disciplinary files. And if you recall, what is the but-for standard? And I would direct the court's attention to Kinzer, which is, again, another First Circuit case, which was decided by this court, in which it said that within the standard, that the plaintiff has an obligation to raise a genuine issue of fact as to whether retaliation motivated the adverse employment action. And as you know, in retaliation cases, the standard is but-for. So but-for the retaliatory, they have to be able to show evidence, that but-for the retaliatory intent, intent by the person who turned over the records, that's the person, that this would not have happened. We would suggest to you the fact that she asked us to turn it over, and she identified the persons or the entities to whom it should go was sufficient, and that she furthermore gave us a release. And I would argue that in this instance, much as in Evans, the United Airlines case, that this is time-barred. If you read the evidence, and you read the briefs, and you look at all the arguments, the real complaint here is about the falsity of the initial investigation and the actual charges that were proffered. And according to Justice Stevens, in Evans, I happen to like this language, it is in fact a discriminatory act which has not made the basis of a timely charge, is merely an unfortunate event in history, which has no present legal consequences. I would suggest to you that that is what we have here. I would also suggest to you, under the scenario that is being raised by Doe, once there is a falsity in any kind of investigation, and these claims of discrimination, harassment, or whatever, then in perpetuity, the employer is prohibited from ever sending that out, knowing that they had complained about harassment and retaliation and discrimination. That just cannot be the law. And I would suggest, not that it's my role to tell you, I would suggest that it is not the law of the First Circuit. Thank you, Ms. Hutch. With that, we rest on our briefs. Thank you. Sidney Harris, Counsel for Plaintiff Appellant. Just a couple of points, Your Honors. First, Doe is not issue precluded from litigating the question of fact, the issue of fact as to whether the disciplinary charges are false, because that issue has never been litigated before, and was not necessary to any of the previous judgments. The falsity of the disciplinary charges, combined with this post-2017 evidence we have been talking about, the deviation from standard procedure, all raises an influence that- All right, in their brief, I see four references to four releases that specifically ask that the disciplinary information be set forth. Are there other ones that don't ask for that? Your Honor, waiver is an affirmative defense- I'm asking, did she want the disciplinary file released? Are you asking- It's hard to say that something untoward happened in the post-period if she is asking for the disciplinary file to be released. Well, Your Honor, neither Doe's authorization nor her resignation can disrupt this causal chain or be the adverse act of what BPD is doing. The adverse act- If I ask some person who knows nothing about the past history and I say, do this, and by this, I mean, turn over my employment file and my discipline file, and I ask them to do that, and they go ahead and do it, how can we possibly say that person did something retaliatory against me when all they did was do what I asked them to do? And I'm saying, in the brief, I see four documents that seem to be a request by Doe for that. Your Honor, I would point to the but-for causation standard, that Doe's authorizations, which are a contributing factor, cannot and do not disrupt the causal chain. BPD's desire to retaliate against Doe must just be a necessary condition under long-established precedent in Bostock of the Adverse Employment Act that occurred. BPD's desire to retaliate is inferenced through the pre-2017 false charges and the post-2017 deviation from standard procedure. I would also point this court... Well, you say deviation from standard procedure, which is a necessary link in your argument, but Judge Aframe's question to you pointed out that, at least with respect to those four that are identified, the procedure was followed because she specifically asked for the disciplinary records. Your Honor... So if the procedure was filed for, your whole argument collapses. Your Honor, summary judgment can't rest on representative examples, and so all of the burdens BPD would have to meet... Do you have a burden to show that the procedure was not followed? I don't think we have a burden to show the procedure was not followed with respect to what you're asking. I think we have shown that the procedure wasn't followed by what we have in the record. For example, North Shore Community College, this is on pages 254 and 256 of the Joint Appendix, withdrew its offer of employment after receiving Doe's internal affairs file. And here's what it said, I hereby authorize North Shore Community College to get personnel files, employment records, performance evaluations, disciplinary records, and government records. And again, Doe's authorizations to North Shore Community College, not BPD, BPD was not an intended beneficiary of these releases. Her authorizations as a contributing condition to the release of the files does not establish... Think about that. That doesn't make any sense. North Shore then calls up BPD and says, we'd like records. And BPD says, has our employee said you can have records? Yes, of course she has. Here's the paper she signed asking for disciplinary records. Then they say, okay, here are the disciplinary records. And now we're supposed to turn around and say that action by whoever put the file together and sent it was retaliation. Yes, Your Honor, precisely. If BPD's desire to retaliate was a necessary condition to what was released in the records, and that is what our argument is, that the Adverse Employment Act of interfering with Doe's future prospects for employment and the desire to retaliate being a necessary condition all go back to BPD's conduct. It is not incumbent upon the employee not to apply to future jobs because she has to be able to permit background check requests to be eligible for future employment. It is incumbent upon- Right, and that's a claim. Unfortunately, it was lost through failure to do discovery or service. And I don't know, there might be a good claim against some lawyer out there, but that's the problem you have, is that you're saying it's something in the past that's bad, and it infects everything, and it goes to Ms. Hodge's last point, everything in perpetuity going forward. The problem is we are looking at a discreet act, which has to be the mailing of the file. And what do we say that makes that file detectable? I think you've answered me, which is that they deviated from procedures, and we've explored whether that's true or not. But it can't just be that in the way past, somebody had it out for her, because that would make the system unworkable, and not deal with the discreet act that you have to show. Correct, Your Honor, but it is that pre-2017 evidence, which we can use under Morgan and Malone, along with the post-2017 evidence that show this consistent desire to retaliate against DOE. Thank you, Counsel. Thank you.